**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BAXTER HEALTHCARE CORPORATION, BAXTER INTERNATIONAL INC., and BAXTER HEALTHCARE S.A.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HQ SPECIALTY PHARMA CORPORATION, WELGRACE RESEARCH GROUP, ESTATE OF GEORGE OWOO, and JANET FENNING-OWOO, in her capacity as INDEPENDENT ADMINISTRATOR OF THE ESTATE OF GEORGE OWOO and as VICE PRESIDENT OF WELGRACE RESEARCH GROUP,**<br><br>**Defendants.** | **C.A. No. 2:13-cv-6228-FSH-MAH**<br><br>**JURY TRIAL DEMANDED**<br><br>Return Date: May 18, 2015<br><br>***Document Filed Electronically*** |

# DEFENDANT HQ SPECIALTY PHARMA CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF PATENTS-IN-SUIT

Arnold B. Calmann
(abc@saiber.com)
Jeffrey Soos (js@saiber.com)
Katherine A. Escanlar
(kae@saiber.com)
**SAIBER LLC**
One Gateway Center, 10th Floor
Newark, NJ 07102-5311
Telephone: (973) 622-3333
Facsimile: (973) 286-2465

Richard D. Kelly (RKelly@oblon.com)
Stephen G. Baxter (SBaxter@oblon.com)
Frank J. West (FWest@oblon.com)
Tia D. Fenton (TFenton@oblon.com)
Lisa M. Mandrusiak
(LMandrusiak@oblon.com)
Katherine D. Cappaert (KCappaert@oblon.com)
**OBLON, MCCLELLAND,**
**MAIER & NEUSTADT, L.L.P.**
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000

*Attorneys for Defendant HQ Specialty Pharma Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. LEGAL STANDARDS .......... 3

A. Patent Infringement .......... 3

B. Summary Judgment .......... 4

C. Admissions Made To The EPO Should Be Considered .......... 5

III. ARGUMENT .......... 6

A. Summary Judgment Of Non-Infringement Should Be Granted Because HQ's Products Lack An "Osmotic-Adjusting Agent" .......... 6

i. The USPTO Determined That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents" When Allowing The '094 Patent .......... 7

ii. Baxter Has Admitted That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents" .......... 8

iii. Outside Of This Litigation, Baxter Maintains That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents" .......... 10

B. There Is No Infringement Under The Doctrine of Equivalents Because Nothing In HQ's Products Is The Equivalent Of An "Osmotic-Adjusting Agent .......... 12

i. Baxter Has Defined "Osmotic-Adjusting Agent" To Mean An Agent That Adjusts Tonicity of the Solution .......... 12

ii. Propylene Glycol And Ethanol Do Not Function Equivalently To An "Osmotic-Adjusting Agent" ............ 14

IV. The Court Should Order The FDA's 30 Month Stay To Be Lifted ............ 16

V. CONCLUSION ............ 17

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. TorPharm, Inc.*,

300 F.3d 1367 (Fed. Cir. 2002) ....................................................................4

*Andersen v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986)....................................................................................5

*Apple, Inc. v. Motorola, Inc.*,

757 F.3d. 1286 (Fed. Cir. 2014) ...............................................................5, 8

*Burr v. Duryee*,

68 U.S. (1 Wall.) 531 (1863) ........................................................................4

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,

559 F.3d 1308 (Fed. Cir. 2009) ....................................................................4

*Dickinson v. Zurko*,

527 U.S. 150 (1999)....................................................................................7

*Duramed Pharms., Inc. v. Paddock Labs., Inc.*,

715 F. Supp. 2d 552 (S.D.N.Y. 2010) ..........................................................16

*Gillette Co. v. Energizer Holdings, Inc.*,

405 F.3d 1367 (Fed. Cir. 2005) ................................................................5, 8

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,

339 U.S. 605 (1950)....................................................................................4

*Laryngeal Mask Co. v. Ambu A/S*, No. 07-cv-1988,

2009 U.S. Dist. LEXIS 129822 (S.D. Cal. Sept. 25, 2009) ..........................17

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ....................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................................................................................5

*Miller v. Indiana Hosp.*,
843 F.2d 139 (3d Cir. 1994) ........................................................................4

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ...................................................................6

*Prometheus Labs., Inc. v. Roxane Labs.*, No. 11-230,
2013 U.S. Dist LEXIS 176054 (D.N.J. Dec. 16, 2013) .................................4

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 07-cv-2762,
2009 U.S. Dist. LEXIS 56453 (D.N.J. Jul. 1, 2009) ....................................17

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995) .....................................................................3

*Tanabe Seiyaku Co. v. ITC*,
109 F.3d 726 (Fed. Cir. 1997) ............................................................. 6, 10

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
482 F.3d 1330 (Fed. Cir. 2007) ..................................................................17

*W.L. Gore & Assoc. Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*,
975 F.2d 858 (Fed. Cir. 1992) .....................................................................17

*Wahpeton Canvas Co. v. Frontier, Inc.*,
870 F.2d 1546 (Fed. Cir. 1989) ...................................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,

520 U.S. 17 (1997)........................................................................................3

*Zygo Corp. v. Wyko Corp.*,

79 F.3d 1563 (Fed. Cir. 1996) ......................................................................4

**Statutes**

21 U.S.C. § 355(j)(5)(B)(iii)(I) ........................................................................16

**Rules**

Fed. R. Civ. P. 54(b) ........................................................................................17

R. Civ. P. 56(a)...................................................................................................4

## I. INTRODUCTION

The disposition of the patent issues in this case turns on a single question: whether the propylene glycol or ethanol in Defendant HQ Specialty Pharma Corporation's ("HQ") Proposed Esmolol Products[1] is an "osmotic-adjusting agent," as defined by the patents-in-suit[2] and understood by those of ordinary skill in the art – they are not.

Prior to this litigation, Baxter Healthcare Corporation, Baxter International Inc., and Baxter Healthcare S.A. (collectively, "Baxter"), in prosecuting the European equivalent to the '094 patent at issue in this case, admitted that propylene glycol and ethanol are not osmotic-adjusting agents in the claimed formulations. Specifically, Baxter represented to the European Patent Office ("EPO") that a formulation containing the *same components as HQ's Products* – including propylene glycol and ethanol – *lacked an "osmotic-adjusting agent."* The evidence supports this admission and demonstrates that there is no genuine factual dispute that propylene glycol and ethanol are not "osmotic-adjusting agents" in this art.

---

[1] HQ's NDA describes two Proposed Esmolol Products: Esmolol Hydrochloride Premixed Injection 2500mg/250mL (10 mg/mL) and Esmolol Hydrochloride Premixed Injection Double Strength 200mg/100mL (20 mg/mL) (collectively "HQ's Products"). *See* ECF No. 38.

[2] U.S. Patent Nos. 6,310,094 ("the '094 patent") and 6,528,540 ("the '540 patent") (collectively, "patents-in-suit").

During prosecution of the ‘094 patent-in-suit, the United States Patent and Trademark Office (“USPTO”) found, and based the Notice of Allowance on, the fact that *ethanol and propylene glycol are not “osmotic-adjusting agents.”* And even in patent applications subsequent to the patents-in-suit, *Baxter has expressly distinguished ethanol and propylene glycol from “osmotic-adjusting agents”* in this field, representing that formulations containing these ingredients are known to cause injection site pain, whereas “osmotic-adjusting agents” are specifically used to avoid such pain. Moreover, the ‘540 patent-in-suit expressly defines the function of propylene glycol and ethanol as *solubilizers*, not “osmotic-adjusting agents” as required by the claims.

Thus, outside of the context of this litigation, Baxter has defined “osmotic-adjusting agent” and admitted to both the EPO and the USPTO that *propylene glycol and ethanol*, when used in injectable esmolol formulations, *are not “osmotic-adjusting agents.”* Baxter’s litigation-induced allegations otherwise are contrary to the teachings of the patents-in-suit; the understanding of the EPO and USPTO; and most notably, its own prior admissions with respect to the technology at issue in this case. Summary judgment of non-infringement is therefore appropriate, as there is *no genuine factual dispute* that the propylene glycol and ethanol in HQ’s Products are not “osmotic-adjusting agents,” as required by each of the claims of the patents-in-suit.

## II. LEGAL STANDARDS

### A. Patent Infringement

Determining whether a product infringes a patent is a two-step process. First, the Court construes the terms of the claims,[3] and second, the accused product is compared to the properly construed claims. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). And if an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

For there to be infringement under the doctrine of equivalents, the accused product must embody every limitation of a claim, either literally or by an equivalent. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30, 40 (1997). To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605,

[3] HQ's proposed construction of "osmotic-adjusting agent" is set forth in HQ's Opening Claim Construction Brief (ECF Nos. 65, 80-1, 82 and associated documents), and supported by the Declaration of Professor Cory J. Berkland, Ph.D. Regarding Claim Construction of U.S. Patent Nos. 6,310,094 and 6,528,540 (ECF No. 65-1), both filed September 19, 2014.

610 (1950). "A finding of equivalency just because the same result is achieved is 'a flagrant abuse of the term 'equivalent'.'" *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1569 (Fed. Cir. 1996), *quoting Burr v. Duryee*, 68 U.S. (1 Wall.) 531, 573 (1863). Rather, a finding of equivalency is determined by whether the accused product performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

Because this is a Hatch-Waxman Act litigation and HQ has not yet commercialized the HQ Products, non-infringement is determined by comparing the asserted claims of each patent-in-suit with the product that HQ will sell once it obtains final approval of its NDA (HQ currently has tentative approval from the Food and Drug Administration "FDA"). In other words, the features of HQ's Products are determined by reference to HQ's NDA. *Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002).

**B. Summary Judgment**

Summary judgment may be granted if there "exists no genuine issue of material fact that would permit a reasonable jury to find for the moving party." *Prometheus Labs., Inc. v. Roxane Labs.*, No. 11-230, 2013 U.S. Dist. LEXIS 176054, at *7 (D.N.J. Dec. 16, 2013) (Hochberg, J.) (*quoting Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1994)); *see also* Fed. R. Civ. P. 56(a). While

HQ bears the initial burden, once that burden is met, "the burden shifts to the nonmoving party." *Id.* at *8. "To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Id.* (citations omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Id.* at *8-9 (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). *See also Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1076 (Fed. Cir. 2005). Summary judgment is appropriate "if the nonmoving party's 'evidence is merely colorable or is not significantly probative." *See id.* at *9 (*citing Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

**C. Admissions Made To The EPO Should Be Considered**

Baxter's admissions to the EPO are relevant for the interrelated issues of claim construction and non-infringement. According to the Federal Circuit, it is appropriate to consider "statements made before a foreign patent office when construing claims if they are relevant and not related to unique aspects of foreign patent law." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d. 1286, 1312 (Fed. Cir. 2014). *See also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (holding that the patentee's "blatant admission" before the EPO supported a claim construction in keeping with the admission). Furthermore, admissions

against interest made to foreign patent offices may also be determinative of issues of non-infringement. *See Tanabe Seiyaku Co. v. ITC*, 109 F.3d 726, 733 (Fed. Cir. 1997) (Federal Circuit holding that the ITC correctly considered statements made by the patentee before foreign patent offices (including the EPO) in prosecuting foreign counterparts to the patent-in-suit when determining infringement under the doctrine of equivalents). As such, Baxter's admissions to the EPO are properly considered here, and are applicable to both patents-in-suit. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[U]nless otherwise compelled… the same claim term in the same patent or related patents carries the same construed meaning").

## III. ARGUMENT

### A. Summary Judgment Of Non-Infringement Should Be Granted Because HQ's Products Lack An "Osmotic-Adjusting Agent"

Baxter asserts that HQ's Products infringe claims 1, 2, 4, 5, 6, 7, 8 and 9 of the '094 patent and claims 1, 2, 3, 6, 8, 9, 10, 13, 14, 15 and 16 of the related '540 patent. HQ admits the presence of every claim limitation *except* an "osmotic-adjusting agent." Every asserted claim of the patents-in-suit requires the presence of an "osmotic-adjusting agent" as a claim limitation. Ex. A at BXBRV00000004; Ex. B at BXBRV00000008-9. The asserted claims of the patents-in-suit are not infringed, however, because HQ's Products lack any "osmotic-adjusting agent" or

its equivalent. More specifically, no genuine issue of material fact exists because it is undisputed that, prior to this litigation, both the USPTO and Baxter determined that ethanol and propylene glycol are not "osmotic-adjusting agents" in the claimed esmolol formulations.

**i. The USPTO Determined That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents" When Allowing The '094 Patent**

During prosecution of the '094 patent-in-suit, the Examiner at the USPTO relied on and considered prior art U.S. Patent No. 4,857,552 ("the '552 patent"). Ex. H at BXBRV00000048-50; Ex. A at BXBRV00000001. In relevant part, the '552 patent teaches that the "current esmolol formulations use *alcohol [i.e., ethanol] and propylene glycol* to minimize the concentration of water in the formulation and, therefore, slow this degradation pathway." Ex. I at col. 2, ll. 36-39 (emphasis and interpolation added). In line with this disclosure, the Examiner, in issuing the Notice of Allowance for the '094 patent, stated the reason for allowance of this patent as: "[t]he prior art [*i.e.,* '552 patent] *fails to teach or suggest the inclusion of an osmotic [adjusting] agent*." Ex. H at BXBRV00000049 (emphasis and interpolation added). Thus, the USPTO recognized and found, in the context of the '094 patent – which is at issue in this case and is the parent of the '540 patent-in-suit – that *propylene glycol and ethanol are not "osmotic-adjusting agents." See Dickinson v. Zurko*, 527 U.S. 150, 160

(1999) (agreeing favorably with statement "the PTO is an expert body…the PTO can better deal with the technically complex subject matter, and that the PTO consequently deserves deference").

At the time, Baxter did not challenge the Examiner's statement or reasoning for allowing the '094 patent over the prior art '552 patent. Now, however, during this litigation, Baxter asserts that the propylene glycol and ethanol in HQ's Products *are* "osmotic-adjusting agents." This position should be disregarded as a litigation-induced argument, which is directly contrary to the prosecution history of, and the reason for allowance of, the patents-in-suit. There is no *genuine* factual dispute that the ethanol and propylene glycol in HQ's Products are not "osmotic-adjusting agents."

#### ii. Baxter Has Admitted That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents"

Prior to adopting their contrary position in this case, Baxter expressly represented to the EPO that propylene glycol and ethanol (*i.e.*, alcohol) are not "osmotic-adjusting agents" in this technological field. These admissions were made with respect to *the same claim term at issue here*, and in the context of overcoming prior art (an issue universal to patent law), and thus should be considered for summary judgment. *See Apple, Inc.*, 757 F.3d. at 1312; *Gillette*, 405 F.3d at 1374 (holding that the patentee's "blatant admission" before the EPO supported a claim construction in keeping with the admission).

During an opposition proceeding against the European equivalent to the '094 patent, Baxter's opponent relied on a prior art Brevibloc® formulation ("E1") that contained esmolol and both *ethanol and propylene glycol*. Ex. C at HQ0002017; *see also* Ex. D; Ex. E at HQ0001758. Even though the prior art Brevibloc® solution, formulations E1 and E2, included ethanol and propylene glycol, Baxter distinguished these from the '094 patent counterpart, stating that "*no discrete osmotic-adjusting agent is included* in the Brevibloc® infusion preparation of E1." Ex. C at HQ0002019 (emphasis added). Baxter also stated that "[l]ike E1, E2 *does not contemplate adding an osmotic-adjusting agent* to the formulation it discloses." Ex. C at HQ0002020 (emphasis added). In other words, Baxter itself defined the "osmotic-adjusting agent" of the '094 patent equivalent to exclude any component of the prior art formulation, including ethanol and propylene glycol. Indeed, in making this admission, Baxter *expressly disavowed propylene glycol and ethanol as being "osmotic-adjusting agents."*

The EPO agreed with and adopted Baxter's representation that the prior art Brevibloc® E1 formulation – containing propylene glycol and ethanol – did not contain an "osmotic-adjusting agent," finding that "[t]he difference between E1 or E2 and the patent-in-suit is *the absence of an osmotic-adjusting agent in the prior art compositions*." Ex. F at HQ0001832 (emphasis added). Notably, the EPO made this determination based on the representations made by Baxter during the

opposition to overcome the Brevibloc® prior art, similar to the circumstances of the prosecution of the '094 patent at the USPTO discussed above.

Now, however, Baxter is taking the contrary position that ethanol and propylene glycol *are* "osmotic-adjusting agents." Since (1) Baxter has *admitted to the EPO* that propylene glycol and ethanol *are not* "osmotic-adjusting agents" in the esmolol solutions, and overcome prior art based on such admissions; and (2) the *USPTO found* that propylene glycol and ethanol *are not* "osmotic-adjusting agents" in the claimed solutions, and allowed the patents-in-suit on this basis, there is no *genuine* factual dispute that HQ's Products do not contain an "osmotic-adjusting agent," as defined by the '094 and '540 patents. *See Tanabe*, 109 F.3d at 733 (admissions against interest made to foreign patent offices can be determinative of issues of infringement). For this reason alone, summary judgment of non-infringement is appropriate.

**iii. Outside Of This Litigation, Baxter Maintains That Propylene Glycol And Ethanol Are Not "Osmotic-Adjusting Agents"**

Similar to their statements to the EPO, Baxter also expressly, and publicly, stated that propylene glycol and ethanol are not "osmotic-adjusting agents" in this technological field in a published U.S. patent application. Specifically, in 2007 Baxter filed a patent application for a concentrated form of esmolol where the composition includes esmolol, a buffering agent, and may include an "osmotic-

adjusting agent" – precisely the elements of the claims of the asserted patents. Ex. G at BXBRV00153609, claims 1 and 4. Although the claimed composition may include "osmotic-adjusting agents," Baxter explained that "unlike prior art concentrate compositions of esmolol that contain propylene glycol and ethanol, the present invention compositions contain no irritating or harmful excipients." *Id.* at BXBRV00153608, ¶ [0014]. This patent application also states that propylene glycol and ethanol are "agents known to cause injection site pain or irritation," *id.* at BXBRV00153607, ¶ [0008], and that "[i]n order to avoid the incidence of, or to lessen, osmotic shock (e.g., pain at the site of injection)" it may be necessary to use an "osmotic-adjusting agent," *id.* at BXBRV00153608, ¶ [0019].

In other words, according to Baxter, *propylene glycol and ethanol cannot be, and are distinguished from, "osmotic-adjusting agents"* in these formulations, as they cause injection site pain, whereas "osmotic-adjusting agents" lessen such pain. Baxter's admission, *again*, that propylene glycol and ethanol are not "osmotic-adjusting agents" in this art demonstrates there can be no *genuine* factual dispute that HQ's Products do not contain an "osmotic-adjusting agent," warranting summary judgment of non-infringement.

### B. There Is No Infringement Under The Doctrine of Equivalents Because Nothing In HQ's Products Is The Equivalent Of An "Osmotic-Adjusting Agent

HQ's Products also do not infringe under the doctrine of equivalents because they lack any equivalent to the "osmotic-adjusting agent" of the claims. The only ingredients in HQ's Products that Baxter has identified as corresponding to the required "osmotic-adjusting agent" are propylene glycol and ethanol, which cannot be considered the equivalent of an "osmotic-adjusting agent;" particularly because they do not have the same function and do not work in substantially the same way to achieve substantially the same result as an "osmotic-adjusting agent."

As set forth in more detail below and in HQ's claim construction briefing, the patents-in-suit define "osmotic-adjusting agent" as an agent used to "adjust tonicity" of the claimed solution. Because there is no genuine factual dispute that *ethanol and propylene glycol do not "adjust the tonicity" of the claimed parenteral solution*, there is no infringement under the doctrine of equivalents.

#### i. Baxter Has Defined "Osmotic-Adjusting Agent" To Mean An Agent That Adjusts Tonicity of the Solution

The specifications of both patents-in-suit expressly define the "osmotic-adjusting agent" as an "*agent to adjust tonicity of the solution*."[4] *See* ECF No. 65-

---

[4] HQ defines "osmotic-adjusting agent" as "an agent to adjust tonicity of the solution." The additional language used in HQ's claim construction briefing explains what it means to adjust tonicity, as understood by one of ordinary skill in the art.

1, Berkland Claim Construction Decl. (attached as Ex. J) at ¶¶ 18, 30, 38. The ‘094 patent specification states that “[t]he present invention provides a … parenteral solution containing esmolol hydrochloride and a pharmaceutically acceptable buffering agent and *an osmotic adjusting agent to adjust the tonicity of the solution*;” and the ‘540 patent specification states that the “present invention provides a … parenteral composition containing esmolol hydrochloride and a pharmaceutically acceptable buffering agent and *an osmotic adjusting agent to adjust the tonicity of the solution*.” Ex. A at BXBRV00000002, col. 1, ll. 62-65 (emphasis added) and Ex. B at BXBRV00000006, col. 2, ll. 4-7 (emphasis added). And pre-litigation, Baxter referred to the patents-in-suit as covering “isotonic” formulations, consistent with the definition of “osmotic-adjusting agent” meaning agent to adjust the tonicity of the solution. *See* Ex. G at BXBRV00153607, ¶ [0004] (“Ready to use isotonic, and concentrate formulations, of esmolol … are discussed in U.S. Patent Nos. … 6,310,094, and 6,528,540”).

Baxter’s definition of “osmotic-adjusting agent” in the patents-in-suit is supported by statements made by Dr. Mahesh Chaubal, Director of Product Development in Global R&D within the Medication Delivery Division of Baxter Healthcare. Specifically, in prosecuting the European equivalent to the ‘094 patent at the EPO, Baxter’s Dr. Chaubal declared – in reference to parenteral esmolol formulations – that “[t]he term “tonicity agent” is used *synonymously* with

'osmotic adjusting agent' by persons familiar in the state-of-the-art." Ex. K at HQ0001894 (confirming that "osmotic-adjusting agent" is an agent that adjust tonicity) (emphasis added); Ex. J at ¶ 63.

Thus, according to the specification of the patents-in-suit, stating that "osmotic-adjusting agents" are added to adjust tonicity, *and* with Baxter's previous representations to the EPO that persons familiar in the art of the '094 patent would use the terms "osmotic-adjusting agent" and "tonicity agent" *synonymously*, "osmotic-adjusting agent" is properly defined as an agent used to adjust the tonicity of the solution. *See* ECF No. 80-1 at 14-15.

**ii. Propylene Glycol And Ethanol Do Not Function Equivalently To An "Osmotic-Adjusting Agent"**

As defined in the patents-in-suit, the function of the claimed "osmotic-adjusting agent" is to "adjust the tonicity" of the parenteral solutions. Ex. A at BXBRV00000002, col. 1, ll. 64-65 and Ex. B at BXBRV00000006, col. 2, ll. 5-7; Ex. J at ¶¶ 43-60. Yet, the function expressly described for propylene glycol and ethanol (the only compounds Baxter suggests could function as "osmotic-adjusting agents") in the '540 patent-in-suit is that of a *solubilizer*, not an agent used to "adjust the tonicity" of the claimed solution. *See* Ex. B. at BXBRV00000006, col. 1, ll. 45-48 ("with propylene glycol and ethanol added to increase solubility of the esmolol").

This written description of the function of ethanol and propylene glycol in the patents-in-suit – *as solubilizers and not tonicity adjusters* – is consistent with the knowledge of those of ordinary skill in the art in 2001. *See* Ex. M at HQ006460-61 ("Ethanol is useful as a preservative when it is used as a solvent…Propylene glycol also is used as a solvent …") and HQ006776 (ethanol used "principally for its solvent powers," with numerous additional uses listed; notably absent is any mention of its use as an "osmotic-adjusting agent"), and HQ006778 (propylene glycol is a "solvent, preservative, and humectant," without any mention of its use as an "osmotic-adjusting agent"); *see also* Ex. L at HQ0006946 ("solutes such as … ethanol permeate cells freely and therefore will have no effect on tonicity"). It is also consistent with Baxter's representations to the EPO that compositions containing propylene glycol and ethanol "*[do] not contemplate adding an osmotic-adjusting agent* to the formulation it discloses." Ex. C at HQ0002020 (emphasis added) (discussing prior art esmolol formulations E1 and E2).

As such, Baxter (1) admits that neither propylene glycol nor ethanol have the same function or work in substantially the same way to achieve substantially the same result as an "osmotic-adjusting agent;" and (2) expressly defines the function of propylene glycol and ethanol in the claimed solutions as solubilizers – not as "osmotic-adjusting agents" that adjust the tonicity of the solutions. Based

on this evidence, there can be no genuine material factual dispute that nothing in HQ's Products, including ethanol and propylene glycol, has the same function and works in substantially the same way to achieve substantially the same result as an "osmotic-adjusting agent" as defined in the patents-in-suit. Thus, HQ's Products do not infringe under the doctrine of equivalents, and summary judgment of non-infringement is appropriate.

## IV. The Court Should Order The FDA's 30 Month Stay To Be Lifted

The Hatch-Waxman Act provides that when a district court decides that a patented drug is not infringed, the district court should enter judgment reflecting that decision and end the 30 month stay of the FDA's final approval of the drug product. 21 U.S.C. § 355(j)(5)(B)(iii)(I); *see also Duramed Pharms., Inc. v. Paddock Labs., Inc.*, 715 F. Supp. 2d 552, 565 (S.D.N.Y. 2010), *aff'd*, 644 F.3d 1376 (Fed. Cir. 2011) (granting summary judgment of non-infringement and directing the Clerk of Court to enter judgment to end the automatic thirty-month stay). As detailed above, summary judgment of non-infringement should be granted in this case because there is no genuine dispute that HQ's Products do not contain an "osmotic-adjusting agent," either literally or under the doctrine of equivalents.

Additionally, because granting summary judgment of non-infringement will be "an ultimate disposition" of the patent infringement claims in this multiple-

claim action, and because the remaining state law claims are separable from the infringement claims, it is appropriate to enter a final judgment of non-infringement under Fed. R. Civ. P. 54(b). *W.L. Gore & Assoc. Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*, 975 F.2d 858, 861-62 (Fed. Cir. 1992); *see also Laryngeal Mask Co. v. Ambu A/S*, No. 07-cv-1988, 2009 U.S. Dist. LEXIS 129822, at *14-16 (S.D. Cal. Sept. 25, 2009) (entering judgment on the patent claims and counterclaims when there were still pending false advertising and state law counterclaims).

Further, it is in the public interest to lift the 30 month stay and allow for the approval of HQ's Products. "A central purpose of the Hatch-Waxman Act is to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible." *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 07-cv-2762, 2009 U.S. Dist. LEXIS 56453, at *12 (D.N.J. Jul. 1, 2009) (*quoting Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1334 (Fed. Cir. 2007)) (internal quotations omitted). Therefore, preventing HQ from marketing its non-infringing product "would be contrary to the public interest." *Id*. at *13.

## V. CONCLUSION

There is no genuine factual dispute that HQ's Products do not infringe the patents-in-suit, either literally or under the doctrine of equivalents for at least one of three reasons, any of which would be sufficient alone. First, Plaintiffs' own

admissions to the EPO and USPTO indicate that propylene glycol and ethanol are not "osmotic-adjusting agents" as used in this art. Second, the USPTO, in granting the '094 patent-in-suit, already determined that ethanol and propylene glycol are not "osmotic-adjusting agents." And third, one of ordinary skill in the art reading the patents-in-suit would understand the function of ethanol and propylene glycol to be solubilizers, not "osmotic-adjusting agents" used to adjust the tonicity, as required by the patents. Accordingly, HQ respectfully requests that the Court grant summary judgment that HQ's Products do not infringe, either literally or under the doctrine of equivalents, any claim of the '094 and '540 patents. Furthermore, HQ respectfully requests an order lifting the 30 month stay of the FDA final approval of HQ's Products.

Dated: February 20, 2015

Respectfully submitted,

**SAIBER LLC**

Attorneys for Defendant HQ Specialty Pharma Corporation

/s/ Arnold B. Calmann

Arnold B. Calmann (abc@saiber.com)
Jeffrey Soos (js@saiber.com)
Katherine A. Escanlar (kae@saiber.com)
One Gateway Center
10th Floor, Suite 1000
Newark, NJ 07102-5311

Richard D. Kelly (RKelly@oblon.com)
Stephen G. Baxter (SBaxter@oblon.com)
Frank J. West (FWest@oblon.com)
Tia D. Fenton (TFenton@oblon.com)
Lisa M. Mandrusiak (LMandrusiak@oblon.com)
Katherine D. Cappaert (KCappaert@oblon.com)
**OBLON, McCLELLAND, MAIER & NEUSTADT, L.L.P.**
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000